Mr. Sikandar Good morning, Your Honors, and may it please the Court. My name is Paul Sikandar, and I represent the appellant Andrew Albert in this matter. May I please reserve two minutes for rebuttal? Your Honors, the District Court erred when it granted Oshkosh's motion to dismiss for failure to state a claim under the Employment Retirement Income Security Act of 1974, known as ERISA's duty of prudence provisions, by predominantly relying upon recently vacated Seventh Circuit precedent, and by inappropriately making factual determinations on a Rule 12b6 motion. Mr. Albert therefore asks this Court to reverse the District Court's decision granting Oshkosh's motion to dismiss, and that the case be remanded for the following four reasons. Would you be satisfied with what amounts to a GVR in Supreme Court parlance? That is, remanded. Would your District Court please reconsider in light of Hughes v. Northwestern? And then we might see what's really going on here. Your Honor, with all due respect, we believe that the record is clear that Mr. Albert has plausibly alleged a violation of the duty of prudence as articulated in Tybill v. Edison International, applying the pleading standards in Ashcroft v. Iqbal and Bell Atlantic v. Hughes. So, to more directly answer your question, Your Honor, it wouldn't be our first choice. We would like you to reverse and send this back so it can go to discovery. But on the other hand, if the only other alternative was to dismiss— Maybe I'm not clear, but if we do that, doesn't it have to go to discovery? I read Hughes as saying, complaints like this cannot be dismissed on the pleadings. They belong at the summary judgment standard, because that's where the defendant's justifications for their behavior can be heard, as they can't be heard at 12b-6. That is how I understand Hughes too, Your Honor. Yeah, well, okay. I thought it was a perfectly clear opinion. I did too. Maybe I should just sit down right now. I take your position to be, in the answer that you were continuing, that you don't want to run the risk that the district court somehow disagrees. And so, my question is, do you, in your opinion, are there any claims asserted in your complaint that are not impacted by Hughes? And then, let's discuss standing. Sure, Your Honor. So, let's start with the other claims besides the duty of prudence. In addition to the duty of prudence claim, Mr. Albert believes that he has Article III standing to bring his duty of loyalty, disclosure, monitoring, and prohibited transaction claims. With regard to Article III, Your Honor, there is the familiar triumvirate of injury in fact, that it was caused by an action of the defendant and it's redressable by the court. Here we have an alleged injury in fact, in the sense that there were excessive record keeping, share class investment, consultant fees. This was caused by Oshkosh's selection of Fidelity as the record keeper, and it is redressable with equitable relief by the court. Now, once Article III is met, this case is brought in a representative capacity on behalf of the plan under ERISA Section 502A2, and therefore, Mr. Albert is allowed to sue for injuries that sweep beyond his own, including for investments that he hasn't yet held, and including for time periods when he wasn't employed by Oshkosh. Has this court or any court of appeals adopted that view about sweeping, sweeping in injuries other than one's own? Your Honor, there are a number of district courts across the country that have adopted that exact view. In the Barnabas case from the District of New Jersey, they stated recently that all courts to consider this. I was asking about court of appeals. Court of appeals, Your Honor, I do not believe so. I think there's one that is currently up on appeal at the Third Circuit and in the Ninth Circuit, but I don't believe those decisions have come down yet, Your Honor. Your Honor, with regard to the other claims you asked about, there's a breach of duty of loyalty claim based on the plausible allegation in the complaint, and I refer you to the amended complaint paragraphs 207, 212, and 213, suggesting that Oshkosh and Fidelity pushed plan assets to Strategic Advisors Incorporated, a party in interest and a wholly owned subsidiary of Fidelity, in a manner that smacks of self-dealing, which is the nature of a duty of self-loyalty claim. With regard to the breach of duty to monitor claim, it is completely derivative of both the breach of prudence and the breach of duty of loyalty claims, and so to the extent that those survive the motion to dismiss, so does the duty to monitor claim. The failure to disclose claim is based on ERISA regulations that require that an individual have sufficient information to make informed investment decisions. We have plausibly alleged that Mr. Albert was missing crucial information in various plan documents, including his quarterly statements and in the annual fee disclosure. On your failure to disclose claim, we rejected that argument in our opinion in HECR. Are you arguing that Hughes overrules HECR or overrules that aspect with respect to the duty to disclose? No, Your Honor. So how could that claim continue to survive given our reasoning in HECR? For two reasons, Your Honor. HECR was decided in 2009 by this Court. In 2010, the current disclosure regulations were put into place both under sections 404A5 and sections 408B2, and then they went into effect in 2012. So HECR didn't have the opportunity to look at these specific regulations that we are looking at under ERISA here. We believe those regulations make clear that it is important that an individual have fee information, other plan-level information that can allow them to make an informed investment decision. It simply didn't exist, that language, when HECR was decided in 2009. And what's the second reason? I think you said there were two. There is a second reason, Your Honor. That particular language in HECR, if you read it, also talks about understanding the net fee involved, and our argument is the net fee involved here was impossible to know because information concerning revenue sharing and other types of fees that came off of the total  Finally, with regard to the prohibited transaction claims, which make up Counts 7, 8, and 9 of the amended complaint, Mr. Albert asked this Court not to adopt a party and interest definition, which requires some other relationship, which was used by the D.C. Circuit Court in the Sellers case. We believe that this definition is inconsistent with the textual definition in ERISA Section 314, which just talks about a party and interest being any party that deals with planned assets and, in this case, furnishes goods or services. This Court in Allen v. Great Bank from 2016 wrote, ERISA identifies a number of transactions that are flatly prohibited between plan and party and interest. And they went on to say in Allen that fears that reading these provisions as written will lead to a flood of litigation, and this is the Court's term, are overwrought. So they thought Rule 11 and other procedural mechanisms would keep that flood of litigation. So we believe that Mr. Albert has plausibly led a prohibited transaction claim as well. Your Honors, given the procedural posture of this case, we also believe the District Court erred by deciding a number of factual disputes, including over plan fee calculations, appropriate plan and investment comparators, including the sub-question of whether the recordkeeping services were comparable, issues involving what's the appropriate share class definition to consider, and whether or not you need to have competitive bidding for recordkeeping services. We believe the law is clear that all of these issues should have been considered to be factual disputes not appropriate for decision on a 12b6 motion, and therefore the District Court erred in dismissing the claims here on those grounds as well. Your Honors, I'd like to talk particularly about share classes because there is some confusion with regard to share classes. This Court previously discussed share classes in the Loomis case, which was decided by this Court in 2011. In Loomis, and in fact in Hughes itself, there is a discussion about retail shares versus institutional shares, and retail shares are those that you and I can walk into our local investment advisor and get at a fairly high price. When you're an institutional investor, like a large retirement plan like we have here, you get a better price and you get different possibilities, what we call share classes. And with regard to the share classes, we allege that when you're talking about share classes, they are essentially the exact same type of investment by the same portfolio manager. So yeah, we're kind of back to my beginning. You certainly allege that, and the defendant certainly denies that, and one therefore would wonder why we are at 12B6 rather than summary judgment. I'll be asking this question to Mr. Blumenfeld. Yes, Your Honor. I just wanted to make one point, and I don't disagree with anything you said, but there is a distinction between net expense ratio, which takes into account the revenue sharing that might be involved, that is paid from the mutual fund carrier to the record keeper to provide services, and the total expense ratio. The reason I'm bringing it up, Your Honor, is the district court below said that our preference for the net expense ratio over the total expense ratio was a novel concept. That was the terminology they used. And as we've pointed out in our briefs, it's just the opposite. This is an industry norm. We gave you an example in the brief of CAP Trust, which was one of the largest investment advisors. They tell people not to fall for the pitfall when benchmarking and only look at total expense ratio. They say instead one should look at the net expense ratio, and that's exactly what we did. But you're right, Your Honor. To the extent that there is a factual dispute about whether we should be looking at the total expense ratio or the net expense ratio, it's a factual dispute. Or which of these is reasonable? Or which of these is reasonable? There are factual disputes about what the differences are, and then there are disputes about what is reasonable and prudent for an employer to do. Correct, Your Honor. And one of the things, and maybe I'll end with this, is throughout their briefing— I'm sure you read all the briefs that were filed in Hughes. I did, Your Honor. What Oshkosh is arguing here is pretty much what Northwestern argued, which is everything we did was perfectly sensible, and we know what happened to that. It said, go to summary judgment. Yes, Your Honor, that is absolutely correct, and again, I'm tempted to sit down, but I might have to say one more thing if I might, which is that with regard to the claim about we don't know anything about the actual process. We haven't alleged anything about what actually happened here with the fiduciary committee or what all the plan documents look like. The response to that is, one, we asked for those documents and were denied under ERISA Section 104B4. We asked for those documents on July 24, 2020, and we were denied, and then we pointed out that we were denied in Section 137 of our—or Paragraph 137 of our amended complaint. The other thing to say is I want to address what I know my opposing counsel is going to address, which is this language from Hughes that asks whether, you know, the fees here fall within the range of reasonable judgments a fiduciary may make based on her experience and expertise. The solicitor of labor actually submitted a brief in the ongoing case of now—I think it's called Devaney and Northwestern again, but it might be called Hughes v. Northwestern—but here it doesn't apply because if we have said that Oshkosh has failed to take advantage of the plan's size to timely negotiate pricing rebates from existing record keepers, then Northwestern could have obtained the same record-keeping services for less. Your Honor, I see I'm out of time. May I briefly conclude? Your time has expired, counsel. Okay. Thank you, Your Honor. Mr. Blumenfeld. Good morning, Your Honor. And may it please the Court. My name is Jeremy Blumenfeld and I represent defendants at police in this matter. Judge Easterbrook, I know you have some questions for me and some questions that I'd like to address. Well, you already know what it is, which is haven't we been told pretty clearly in Northwestern that the kind of justifications Oshkosh offers belong at the summary judgment stage rather than the pleading stage? And I'll answer that question and also answer a question that you had asked one of the earlier arguments, advocates in that circumstance, which is Devane is back before this Court. I believe it is called now Hughes v. Northwestern. And they're briefing in that case the same issues that we're briefing now, which is whether for purposes of Rule 12b-6, the complaint in that case stated a claim. And I would say I would take what the Supreme Court did in Hughes and assume that the Supreme Court said what it meant and meant what it said, which was you have to consider these issues without the categorical rule, as the Supreme Court described it in Hughes, but not disregarding all of the other arguments and basis for rejecting the claims for purposes of Rule 12b-6. In Hughes, the Supreme Court talked about Bell Atlantic v. Twombly, for example. And the Supreme Court wouldn't have talked about that case if they thought that this was just an issue to be decided at summary judgment. This was a decision reached by the Court, 8-0 in the context of Hughes, rejecting a very specific argument and sending it back for reconsideration of that issue. I don't think it warrants that in this case or in every case alleging breach of fiduciary duty that you automatically get to discovery. If you look at the Supreme Court's decision, that last sentence, the Supreme Court was in favor of the Rule 12 motion. And that standard isn't a new one. It in fact is the standard that this Court applied in Devane. If you look at Mr. Albert's brief at footnote 14 of his opening brief, he admits as much. He says, there's nothing new in this last sentence. This is the same pleading standard utilized in the now vacated Devane opinion. A plaintiff must plausibly allege action that was objectively unreasonable. Hughes didn't reject this Court's decisions in ERISA fiduciary breach jurisprudence over the last 13 years. It was a narrow opinion rejecting one specific thing that the Supreme Court thought was wrong with the Devane opinion. And that's why the case was sent back for consideration under Rule 12 of those issues. Are you asking us to wait until the panel in the Hughes case here rules before we take this up? I'm not, Your Honor, but I certainly am cognizant of the fact that as Judge Easterbrook suggested earlier, you guys want to coordinate so that you're not issuing inconsistent opinions. So I wanted to make sure that you were aware of that. And frankly, I think Judge Griesbach's opinion in our case is the perfect vehicle for reaching those issues because Judge Griesbach didn't rely on that categorical rule in reaching his opinion here. I think if you look at the objective unreasonable standard, that makes this case relatively straightforward and warrants affirmance, to be clear, for purposes of a Rule 12 motion. First with respect to record keeping fees, the complaint alleges that nine plans paid less. Putting aside some of the details about the fact that the math is wrong and it's an apples to orange comparison, you can't draw the inference from the fact that a few plans paid less out of thousands or tens of thousands that the plan's fees were objectively unreasonable. Of course, you could always point to one plan that paid less or two plans that paid less, but that doesn't mean that the fees that the Oshkosh plan were objectively unreasonable and it doesn't allow that inference. You can't even tell from the allegations here that the plan was paying above average or above median fees. And I would say, Your Honor, if the complaint had alleged all of the plans that were similar to the Oshkosh plan and the Oshkosh plan fell right at the median and right at the midpoint, right at the average, you couldn't draw the inference that the Oshkosh plan's fees were reasonable in that circumstance, even though if you did that, there would be a lot more than nine plans that ended up paying less. In other words, just alleging that a few plans paid less doesn't allow the inference, at least plausibly so, that the plan's fees were unreasonable. A few other things I'd like to mention with respect to the recordkeeping issue. The first is the Bell Atlantic versus Twombly case itself. And I mentioned that, as counsel mentioned a few moments ago, in Bell Atlantic versus in the Hughes case, the Supreme Court said the Bell Atlantic versus Twombly standard is the standard that applies. And in getting ready for today's argument and anticipating some of the questions you've presented today, I went back and looked at the amended complaint in the Bell Atlantic versus Twombly case. They didn't have a chart and they didn't have a graph like we have in this case, but they had something similar. There was a map. And the map in that case showed all the different jurisdictions, the localities, the states, competing with each other, but weren't competing in each other's territory. And the Second Circuit in Bell Atlantic versus Twombly looked at that and said, well, we're going to draw the inference that there was an agreement for them to compete, not to compete, excuse me, and therefore we're going to say that that state's a claim. But the Supreme Court reversed. It considered all of that issues and all of those facts and said, we can't infer from what is alleged here that there was an agreement not to compete. And the same is true here. You can't infer from the fact that a few plans ended up paying less in recordkeeping fees that the plan's fees here were objectively unreasonable. This court in Hecker and again in Loomis said that you don't have to select the cheapest investment options. And the same holds true when it comes to selecting a service provider. You don't have to select the cheapest. But all the allegations in the complaint here allow an inference of is that this plan wasn't the cheapest. It doesn't allege or allow the inference that the plan's fees were even above average or above the median and therefore it can't be sufficient to state a claim. You could imagine this circumstance in any other context and I would submit it would be easy. I had to stay at a hotel room last night in advance of presenting argument today. I'm sure plaintiff's counsel did as well. I don't know if the hotel room that I stayed at was more expensive or less expensive than But you can't draw the inference that one of us paid an objectively unreasonable hotel fee by virtue of the fact that the other might have gotten it for less, especially without knowing what the average is, what the median is, or anything else more broadly about where this plan fits within, as the Supreme Court put it, the range of reasonable judgments that fiduciaries make. You broadly then seem to assert throughout the brief that Albert just did not provide enough facts. They need, they fail to provide more. Where would they get these facts as Albert's counsel noted you all denied them and you're not in discovery. So the facts, Your Honor, that I think Mr. Albert needs are not really facts about this plan. What he's alleging, and he alleges specifically to the dollar what he says the Oshkosh plan's fees were, for example. What he doesn't allege is information about other plans in the marketplace except for the nine plans that he picked. And that's not information that we have control over. And I would say further, it's a similar situation to what the plaintiffs were faced with in the Bell Atlantic versus Twombly case. They didn't have the facts to be able to plead an appropriate claim and the Supreme Court said the allegations that you have made are not sufficient. And I don't know where Mr. Albert might get other facts about what the marketplace for recordkeeping fees are, for example. But that's not something within our control or information that we have. The last thing I would point out, Your Honor, regarding this is Mr. Albert's allegations make the situation even worse because the comparison that he does is what is referred to in some of these cases as an apples to oranges comparison. That is, the complaint alleges, the amended complaint in paragraph 85, that when you're comparing recordkeeping fees, for example, you have to look at all fees being paid to indirect compensation, which generally refers to revenue sharing. For the Oshkosh plan, that's what the complaint does. It purports to calculate the direct compensation and the indirect compensation. But for the other plans, Mr. Albert only includes the direct compensation and ignores the indirect compensation that those plans might have paid. Your Honors, I would submit that's not an apples to apples comparison and doesn't allow the inference even that this plan was more expensive than the nine other plans identified in the complaint. That's like saying that one car was more expensive than another car by comparing the down payment and monthly payments of one car against just the monthly payments of the other cars and completely ignoring whether and how much the down payments are for those other cars. Turning to the share class issue, if I could, Your Honors, this complaint alleges the exact opposite of all of those other cases that Mr. Albert talked about. That is, in those cases, the complaint alleges that the plan fiduciaries offered the more expensive retail share classes of the funds. In fact, that was an allegation in the Devane case that's now back before this court. And in all of those complaints, the plaintiffs allege that the defendants should have offered the lower cost institutional share classes of the same funds. And that's, in fact, what the original complaint in this case alleged as well. But in the amended complaint, they allege the opposite. I certainly understand employers' frustration that they see themselves in a damned if you do and damned if you don't world. Whichever kind of stance they take, it will be alleged that they should have taken the opposite stance. Correct. But maybe I'm just sounding like a broken record. I find it hard to see how, after Hughes, this is all resolved as a matter of dealing with actions. With respect to share classes in particular, Your Honor, I guess what I would say is this. If the plaintiffs in all of these other cases can come up with an argument that plans should be in the lower cost institutional share class, just like the Oshkosh plan did, and Mr. Albert can come up with an economic rationale for being in the more expensive retail share class of the same exact funds, and to be clear, the complaints in a lot of these cases deal with the same funds and the same share classes, I would submit, Your Honor, that that means all of them fall within the range of reasonable judgments that fiduciaries can make. And therefore, none of them fall out. So the Supreme Court really is just wasting everybody's time. It should have affirmed and said, essentially, all plans are reasonable. Stop. But they didn't say that. Are we supposed to say, as a matter of law, the Supreme Court is just wasting our time because they're all reasonable? I would say no, Your Honor. What I would say is... Certainly. That would be called insubordination. I'm not asking you to do that, Your Honor. What I'm saying, I think, is that the Supreme Court meant exactly what it said, which is that categorical rule doesn't apply. Whether the complaint in this case or in Devane or in any other case states a claim that the plan's fees were objectively unreasonable or the plan's investments were objectively unreasonable is a Rule 12 issue, just like the Supreme Court said in Hughes it was, to separate out what the Supreme Court called the plausible sheep from the meritless goats. And I would be concerned, Your Honor, that a contrary ruling that is interpreting what the Supreme Court did in Hughes, to say that every fiduciary breach claim states a claim as long as you include a few charts and graphs with some numbers, doesn't fulfill that promise of hers. I don't see why you even have to include charts and graphs. Well, and that's right. That's the necessary sort of implication of what it is you're suggesting, I think. It's not really hard to satisfy Rule 8, a short and simple statement of the claim. What you have in mind for what a complaint has to have is a technically detailed and elaborate statement of the claim, which is certainly not what Rule 8 says. And I would say, Your Honor, that the Supreme Court in Bell Atlantic v. Twombly reconciled those two issues by saying, you only need a short and plain statement of the claim, but it has to be short and plain about facts that plausibly allege a claim. And just like the complaint in Bell Atlantic v. Twombly, the complaint here, although it has information, it has facts, those facts don't lead to the conclusion, at least plausibly so, that this plan was imprudently managed. And I would say, if you could state a claim against any plan that was more expensive than the cheapest, then eight of the other comparator plans that are identified in this complaint would also be subject to the same fiduciary breach allegations. And that really doesn't do any service to Rule 12 or the purpose of Rule 12. And it also, I think, would be fundamentally counter to the idea that prudent fiduciary behavior is supposed to be guided by what the range of reasonable fiduciaries are doing under the circumstances. If nobody is prudent, because a plaintiff's lawyer can come in and assert a complaint saying, well, in hindsight, I would have picked this one that was cheaper, or I would have selected this service provider that was cheaper. Have you recently read complaints in either discrimination in employment claims or tort claims? They just say, this was bad medical care. That states a claim. You don't have to attach an affidavit from a physician, for example. Some states require that as a matter of state practice, but Rule 8 doesn't require it, right? Why should we be treating Rule 8 as different in this class of claims? So Your Honor, you started out by saying that you're a generalist. I'm a specialist and focus on this area, so I haven't read the sorts of complaints recently that you're talking about. But I will say- Yeah, well, if I know any area of law, it turns out to be corporate and securities law. Well, and I guess what I would say, and what I would come back to, Your Honor, is if you read Bell Atlantic versus Twombly, the plaintiffs in that case were making exactly the argument that you talked about, which is, all we need is a short and plain statement. And the plaintiffs in that case alleged, by the way, that there was an agreement for the defendants not to compete with each other. And the Supreme Court looked at all of that and said, Rule 12 requires more. I see that my time is up. Unless the Court has any questions, I want to thank you very much for your time and attention. Thank you very much to both counsel. The case is taken under advisement.